1
2
3
4
5
6          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF WASHINGTON
7
8    UNITED STATES OF AMERICA,           )
                                         )  NO. CR-05-180-LRS-1
9            Plaintiff,                   )     CR-05-180-LRS-2
                                         )     CR-05-180-LRS-6
10                                        )     CR-05-180-LRS-7
     v.                                   )
11                                        )  **MEMORANDUM OPINION**
                                         )  **RE SENTENCING**
12   DIXIE ELLEN RANDOCK,                 )
     STEVEN KARL RANDOCK                   )
13   HEIDI KAE LORHAN,                     )
     ROBERTA LYNN MARKISHTUM,              )
14                                        )
             Defendants.                   )
15   _____ )
16
17   **I.  INTRODUCTION**
18          Three of these Defendants were sentenced on July 2, 2008, pursuant to the
19   terms of Fed. R. Crim. P. 11(c)(1)(C) plea agreements.  Dixie Ellen Randock
20   received a term of incarceration of 3 years to be followed by 3 years of supervised
21   release.  Heidi Kae Lorhan received a term of incarceration of 12 months and 1
22   day to be followed by 2 years of supervised release.  Roberta Lynn Markishtum
23   received a term of incarceration of 4 months to be followed by 1 year of
24   supervised release.  The sentencing of Steven Karl Randock was continued until
25   August 5, 2008, to allow further consideration of how his medical condition might
26   affect his capacity to serve a term of incarceration in the custody of the Bureau of
27   Prisons.  Although Mr. Randock has not yet been sentenced, calculation of his
28   Total Offense Level under the Sentencing Guidelines is appropriate at this time, as

**MEMORANDUM OPINION -        1**

is ruling upon his individual objections to his Pre-Sentence Report.

This memorandum opinion explains the court's calculation of the Total Offense Level under the Sentencing Guidelines for each Defendant and the impact of the same upon the sentences given to Defendants Dixie Ellen Randock, Heidi Kae Lorhan, and Roberta Markishtum, and the sentence to be given to Steven Karl Randock. With regard to a number of the individual objections filed by the Defendants regarding their Pre-Sentence Reports, these explanations should provide the basis for the court's rulings as to those objections.[1]

A sentence imposed under a Rule 11(c)(1)(C) plea arises directly from the agreement itself, not from the guidelines, even though the court can and should consult the guidelines in deciding whether to accept the plea agreement. *U.S. v. Pacheco-Navarette*, 432 F.3d 967, 971 (9th Cir. 2005), citing *U.S. v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005). The court consulted the guidelines and considered the Total Offense Levels set forth *infra* in deciding that it would accept the plea agreement as to each Defendant. Since this court imposed, or will impose, non-guideline sentences upon the Defendants pursuant to their 11(c)(1)(C) plea agreements, the guidelines were, and are, but one of the multiple factors the court was, and is, required to consider pursuant to 18 U.S.C. Section 3553(a). As the court announced from the bench, whether the applicable guideline range for each Defendant had been as each Defendant argued, or as found by this court and discussed below, the sentences imposed, and to be imposed, would have been the same based on consideration of the other 3553(a) factors, in particular: 1) the nature and circumstances of the offense and the history and characteristics of each Defendant; and 2) the need for the sentence imposed to reflect the

---

[1] A listing of the rulings on all of the objections is contained in Section VI *infra*. This listing summarizes and memorializes the rulings which were made from the bench, and otherwise provides rulings on objections which were not ruled upon from the bench.

**MEMORANDUM OPINION -      2**

1    seriousness of the offense, to afford adequate deterrence to criminal conduct, to

2    protect the public from further crimes of the Defendants, and to provide needed

3    educational or vocational training, medical care, or other correctional treatment in

4    the most effective manner.   The sentences imposed, and to be imposed, upon the

5    Defendants comply with the terms of their 11(c)(1)(C) plea agreements.

6

7    **II.  DIXIE RANDOCK**

8    It is agreed this Defendant's Base Offense Level is 6.  U.S.S.G. Section

9    2B1.1(a)(2).  Defendant does not object to the 2 level mass-marketing

10   enhancement pursuant to U.S.S.G.  Section 2B1.1(b)(2)(A)(ii), and the 4 level

11   enhancement for being an organizer or leader pursuant to U.S.S.G. Section

12   3B1.1(a).

13

14   **A.  Loss Enhancement**

15   This court finds that an 18 level loss enhancement is justified based on a

16   loss in excess of $2.5 million resulting from the fraud.  U.S.S.G. Section

17   2B1.1(b)(1)(J).  Application Note 3(B) to Section 2B1.1(b)(1) states "the court

18   shall use the gain that resulted from the offense as a measure of loss only if there

19   is a loss but it reasonably cannot be determined."  While the loss cannot

20   reasonably be determined, the gain can.  In her plea agreement, Defendant

21   stipulated the Government could prove beyond a reasonable doubt that between

22   August 4, 1999 and August 11, 2005, her and her husband's diploma business

23   "sold approximately $6,282,679.00 in fraudulent academic products to thousands

24   of individual consumers located in the United States and elsewhere;" and that

25   "unbeknownst to the defrauded consumers . . . [the academic] entities were

26   nonexistent shells that conducted no academic business whatsoever."  Even if the

27   evidentiary standard to support this enhancement is "beyond a reasonable doubt,"

28

**MEMORANDUM OPINION -      3**

that standard is satisfied.[2]  Alternatively, a "clear and convincing" standard or preponderance of standard is satisfied.  *U.S. v. Jordan*, 256 F.3d 922, 927-28 (9th Cir. 2001).

There is a loss in this case, albeit a loss which cannot reasonably be determined.  Defendants concede there were some individuals who purchased the academic products who claimed belief in their legitimacy.[3]  Moreover, one cannot ignore the loss resulting from unsuspecting employers who hired individuals based on bogus diplomas issued by Defendants' enterprise.

The plea agreement of Defendant Lorhan acknowledges that Defendant Markishtum, using a false identity, would communicate with schools, businesses, and employers who would contact the Official Transcript Archive Center (OTAC) or the Official Transcript Verification Center (OTVC), businesses owned by the Randocks, seeking to verify the legitimacy of a diploma that had been sold.  In her plea agreement, Markishtum acknowledges the Government could prove the same beyond a reasonable doubt, as well as the fact that she "concealed from employers and prospective employers who were attempting to verify the legitimacy of a degree" the true nature and location of the OTAC and OTVC which "were not

_____

[2]  Each of the Defendants have admitted certain facts, recited in their respective plea agreements, which they acknowledge are sufficient to convict them of conspiracy to commit wire fraud and mail fraud (Dixie Ellen Randock, Steven Karl Randock, and Heidi Kae Lorhan) or misprision of the same (Roberta Markishtum).  Per the terms of those plea agreements, the Defendants agree the Government can establish those facts beyond a reasonable doubt, and that those facts constitute an adequate basis for their guilty pleas.  Defendants acknowledged that proof of those facts beyond a reasonable doubt established beyond a reasonable doubt each of the elements of the crimes to which they pled guilty.

[3]  In her plea agreement, Defendant Markishtum acknowledged she made a statement to law enforcement that she was aware that several consumers complained the degrees they had purchased were "no good."

**MEMORANDUM OPINION -        4**

independent and legitimate entities that had offices and a staff in Washington, D.C., or Wilmington, Delaware." As recited in her plea agreement, Markishtum made statements to law enforcement that: (1) approximately 1,000 businesses, schools, and employers called a toll-free telephone number established by the Randocks, inquiring about a particular individual's academic background, the type of degree awarded, the graduation date, and information, such as GPA, set forth on the individual's transcript; and (2) approximately 600 employers contacted her to verify that a degree had been awarded. Markishtum also acknowledged as part of her plea agreement the fact that she concealed her true identity and was not an employee of the University of Maryland when she falsely verified to the U.S. Department of Veteran Affairs the education and academic credentials of a certain individual who had purchased a bogus University of Maryland degree from the Randocks' diploma mill.

The Defendants contend that "what the consumers did with the degrees they obtained . . . is beyond the scope of the scheme charged by the Indictment;" that "[t]he consumers may have used these degrees to obtain positions within the workforce for which they were not qualified, but that these actions were made independently of the actions of the defendants;" and that "[t]he defendants could not have calculated or anticipated what damage may result from their conduct." Based on the facts recited in and acknowledged by the Defendants in their respective plea agreements, the court disagrees that consumers using their degrees to obtain positions for which they were not qualified constitute actions independent of the actions of the Defendants. The court also disagrees that the Defendants could not have calculated or anticipated what damage may result from their conduct. As discussed above, the Randocks specifically created OTAC and OTVC to "verify" to employers that the degrees issued were supposedly legitimate. The creation and operation of OTAC and OTVC shows the Defendants knew that consumers who purchased the degrees would attempt to use them to

**MEMORANDUM OPINION -      5**

1   obtain jobs or promotions and thus, prospective and actual employers would be

2   asking questions about the legitimacy of the degrees.  OTAC and OTVC were

3   created and operated in furtherance of the Defendants' conspiracy to commit

4   fraud.  That the purchasers of the degrees would use them to obtain jobs and

5   promotions was not "supervening, independent" conduct of third parties.  The

6   losses caused to these prospective and actual employers were not unforeseeable to

7   the Defendants.

8        Furthermore, what the consumers did with the degrees they purchased is not

9   beyond the scope of the Indictment.  Paragraph 14 of the Indictment alleges the

10  Defendants "used fictitious names, titles, and academic pedigrees when

11  communicating with consumers and **employers** who were attempting to determine

12  the legitimacy of a degree."  (Emphasis added).    Paragraph 17 alleges the OTVC,

13  OTAC, and the Academic Credential Assessment Corporation (ACAC) "were

14  created so that the defendants could falsely represent to any employer who sought

15  verification of a degree which had been purchased that the degree was legitimate."

16  The Indictment repeatedly refers to the alleged "duping" of employers, as well as

17  the purchasers of the degrees, as part of the scheme to defraud.

18       Defendants contend any damages sustained by "third party employers"

19  constitute consequential damages because they did not flow directly or

20  immediately from the acts of the Defendants, but were a consequence of the

21  actions of the consumers who purchased the degrees.  Defendants assert that

22  consequential damages are not valued as part of the loss under U.S.S.G.  Section

23  2B1.1(b)(1), citing *United States v. Newman*, 6 F.3d 623, 630 (9th Cir. 1993), and

24  *United States v. Ortland*, 109 F.3d 539, 547 (9th Cir. 1997).  *Newman* and *Ortland*,

25  however, relied upon an Application Note (Note number 2) to Section 2B1.1

26  defining "loss" which is no longer part of the application notes to the 2007 version

27  of the guidelines at issue here.  *Newman* and *Ortland* involved much older

28  versions of the guidelines.  Under the 2007 version of the guidelines, "loss" is

**MEMORANDUM OPINION -     6**

defined at Application Note 3, not Application Note 2.  Furthermore, the definition of "loss" found in the older versions of the guidelines upon which the *Newman* and *Ortland* courts relied in finding that consequential damages could not be counted as part of "loss," is not found under Application Note 3 in the 2007 version of the guidelines.  Under the 2007 version of the guidelines, Application Note 3(A) specifically provides that "loss" is the greater of actual loss or intended loss, and Application Note 3(B) provides that the court may use the gain that resulted from the offense as an alternative measure of loss only if there is a loss, but it reasonably cannot be determined.  Moreover, the losses sustained by "third party employers" do not, in any event, constitute consequential damages because, as discussed above, it was  "predictable" that purchasers of the degrees would use them to gain employment or promotions.  Therefore, said losses flow directly and immediately from Defendants' sale of bogus degrees.  *United States v. O'Brien*, 119 F.3d 523, 536 n. 9 (7th Cir. 1997), quoting Black's Law Dictionary at 390 (6th ed. 1990).[4]

Defendants argue that the conduct of the consumers who purchased the degrees was not "in furtherance of" the "jointly undertaken criminal activity" as required by U.S.S.G. Section 1B1.3(a)(1)(B) pertaining to "Relevant Conduct." Furthermore, Defendants contend the actions of the consumers did not "occur in preparation for the offense, or in the course of avoiding detection for the offense." Defendants, however, ignore U.S.S.G. Section 1B1.3(a)(1)(**A**) which also defines

---

[4] Consequential damages are defined as:

> Damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act . . . .  Damages which arise from the intervention of special circumstances **not ordinarily predictable**.

(Emphasis added).

**MEMORANDUM OPINION -        7**

"Relevant Conduct" to include "all acts and omissions committed, **aided, abetted**, counseled, commanded, **induced, procured, or willfully caused** by the defendant . . . that occurred **during the commission of the offense of conviction**, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." (Emphasis added). What the consumers did (using the degrees to obtain jobs and promotions) does not have to be part of "jointly undertaken criminal activity" to qualify as "relevant conduct" on the part of the Defendants. The consumers who purchased the degrees do not have to be considered "co-conspirators" for their activities and the harm caused thereby to be considered "relevant conduct" on the part of the Defendants.[5]

## B. Relocation Or "Sophisticated Means" Enhancements

There is not sufficient evidence to support a 2 level increase pursuant to U.S.S.G. Section 2B1.1(b)(9)(A) on the basis that this Defendant (Dixie Ellen Randock) relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials. There is not sufficient evidence that the Randocks relocated their business to Post Falls, Idaho to evade law enforcement or regulatory officials. In this regard, it is noted as follows: (1) Steven Randock's plea agreement (p. 15) indicates that only "a portion" of the business was relocated from Washington to Idaho; (2) some of the business remained in Washington as indicated by the fact that on August 11, 2005, when the search warrants were executed, one of the locations searched, and which the Government says was used to operate the business, was office space within

---

[5] In the final Pre-Sentence Reports for each Defendant, the 6 level increase pursuant to U.S.S.G. Section 2B1.1(b)(2)(C) for there being 250 or more victims has been withdrawn on the basis that it is impossible to determine the exact number of victims in this case. While that may be true, the court does not deem this inconsistent with maintaining the enhancement for the amount of loss involved.

**MEMORANDUM OPINION -      8**

"Home Boys," a business located in Mead, Washington; (3) if the Defendants were really trying to evade law enforcement or regulatory officials, it seems they would have tried to get further away than Post Falls, Idaho which is located on the Washington/Idaho border; and (4) Operation Gold Seal had no trouble in tracking the Defendants to their Post Falls address.

There is sufficient evidence, however, to support a 2 level increase for this Defendant pursuant to U.S.S.G. Section 2B1.1(b)(9)(**C**) on the basis that the fraudulent scheme involved "sophisticated means." This is plainly justified by the facts recited in the plea agreements of Dixie and Steven Randock. (See for example, Paragraph N at p. 26 of Steven Randock Plea Agreement regarding domestic and foreign financial accounts used to operate the business).[6] Application Note 8(B) to Section 2B1.1 states:

> For purposes of subsection (b)(9)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of the offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

**C. Total Offense Level**

With an 18 level enhancement pursuant to U.S.S.G. Section 2B1.1(b)(1)(J), and a 2 level enhancement pursuant to U.S.S.G. Section 2B1.1(b)(9)(C), in addition to the 2 level mass-marketing enhancement pursuant to U.S.S.G. Section 2B1.1(b)(2)(A)(ii), and the 4 level organizer or leader enhancement pursuant to U.S.S.G. Section 3B1.1(a), the Adjusted Offense Level for Dixie Randock is 32.

---

[6] Section 2B1.1(b)(9) specifies a two level increase "[i]f (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials . . . **or** (C) the offense otherwise involved sophisticated means." (Emphasis added).

**MEMORANDUM OPINION -    9**

With a 3 level reduction for acceptance of responsibility pursuant to U.S.S.G. Section 3E1.1, her Total Offense Level is 29.  Based on a Criminal History Category of I, the resulting guideline range is 87-108 months.

## III.  STEVEN KARL RANDOCK

It is agreed this Defendant's Base Offense Level is 6.  U.S.S.G. Section 2B1.1(a)(2).  Defendant does not object to the 2 level mass-marketing enhancement pursuant to U.S.S.G.  Section 2B1.1(b)(2)(A)(ii).

Defendant contends he cannot be considered an organizer or a leader since he acted under the supervision and leadership of Mrs. Randock.  It is asserted that it was Mrs. Randock who informed Mr. Randock to set up a corporation, bank accounts, and mail drops.  It is also asserted that Mr. Randock signed paychecks for employees at the direction of Mrs. Randock.  The facts recited in Mr. Randock's plea agreement, including statements that he made to law enforcement agents on August 11, 2005 when the search warrants were executed, constitute sufficient evidence (under any standard of proof) that he was a full and equal partner with his wife in their on-line diploma business, albeit perhaps a less active and more silent partner with less day to day responsibility for operation of the business.  A 4 level enhancement pursuant to U.S.S.G. Section 3B1.1(a) is warranted.

For the reasons discussed above with regard to Mrs. Randock, the court finds that an 18 level loss enhancement is justified with regard to Mr. Randock, who, like his wife, acknowledged in his plea agreement that the Government could prove beyond a reasonable doubt that  between August 4, 1999 and August 11, 2005, their diploma business "sold approximately $6,282,679.00 in fraudulent academic products to thousands of individual consumers located in the United States and elsewhere;" and that "unbeknownst to the defrauded consumers . . . [the academic] entities were nonexistent shells that conducted no academic business

**MEMORANDUM OPINION -       10**

whatsoever."

For the reasons discussed above with regard to Mrs. Randock, although there is insufficient evidence to warrant a 2 level "relocation" enhancement against Mr. Randock, there is sufficient evidence to warrant a 2 level "sophisticated means" enhancement.

Therefore, Defendant Steven Karl Randock ends up with the same Adjusted Offense Level as his wife (32), the same Total Offense Level (29) following a 3 level reduction for acceptance of responsibility, and the same resulting guideline range (87-108 months) based on a Criminal History Category of I.

## IV.  HEIDI KAE LORHAN

It is agreed this Defendant's Base Offense Level is 6.  U.S.S.G. Section 2B1.1(a)(2).  Defendant does not object to the 2 level mass-marketing enhancement pursuant to U.S.S.G.  Section 2B1.1(b)(2)(A)(ii).

For the reasons discussed above with regard to Defendant Dixie Ellen Randock, the court finds that a loss enhancement is justified with regard to Defendant Lorhan, although only a 16 level enhancement pursuant to U.S.S.G. Section 2B1.1(b)(1)(I), since the loss was more than $1 million, but not more than $2.5 million.  The facts recited in the plea agreement of Defendant Lorhan include that between September 4, 2001 and August 11, 2005, the diploma mill conspiracy of which she was a member "sold approximately $2,499,642.36 in fraudulent academic products to thousands of individual consumers located in the United States and elsewhere" and  "unbeknownst to the defrauded consumers . . . [the academic] entities were nonexistent shells that conducted no academic business whatsoever."

For the reasons discussed above with regard to Defendant Dixie Ellen Randock, the court finds a 2 level "relocation" enhancement pursuant to U.S.S.G. Section 2B1.1(b)(9)(A) is not warranted for Defendant Lorhan.  Nor is a

**MEMORANDUM OPINION -      11**

1 "sophisticated means" enhancement warranted for this Defendant pursuant to

2 U.S.S.G. Section 2B1.1(b)(9)(C).  The facts recited in the respective plea

3 agreements and the other evidence of record does not establish that Defendant

4 Lorhan was responsible for complex or intricate offense conduct such as hiding

5 assets or transactions, or both, through the use of fictitious entities, corporate

6 shells, or offshore financial accounts.

7 　　　　Defendant Lorhan asks that she be considered for a 2 level "minor

8 participant" reduction pursuant to U.S.S.G. Section 3B1.2(b).  In order to receive

9 the "minor participant" reduction, the Defendant must establish she was

10 "substantially less culpable than the average participant."  Application Note 3(A)

11 to U.S.S.G. Section 3B1.2.  According to Application Note 5, the "minor

12 participant" reduction applies to a defendant described in Application Note 3(A)

13 "who is less culpable than **most other participants**, but whose role could not be

14 described as minimal."  (Emphasis added).  A "minimal participant" is one who

15 lacks knowledge or understanding of the scope and structure of the enterprise and

16 the activities of others and is "plainly among the least culpable of those involved

17 in the conduct of a group."  Application Note 4 to U.S.S.G. Section 3B1.2.

18 Although Defendant Lorhan may be a "minor participant" vis-a-vis Steven and

19 Dixie Randock, the court finds she is not "less culpable than most other

20 participants." Like Defendant Lorhan, Defendants Amy Hensley, Richard Novak,

21 Blake Carlson, and Kenneth Pearson have also pled guilty to conspiracy to commit

22 fraud.  Hensley and Carlson, like Lorhan, worked as "evaluators" and "advisors"

23 for the Randocks' business, and received commissions from the Randocks..

24 Clearly, Defendant Lorhan is not less culpable than Defendant Markishtum who

25 has not pled guilty to conspiracy, but only to misprision of the same.  As the court

26 cannot find Defendant Lorhan is not less culpable than most other participants, it

27 cannot justify a 2 level "minor participant" reduction.

28 　　　　With a 16 level loss enhancement, plus a 2 level enhancement for mass

**MEMORANDUM OPINION -      12**

marketing, Defendant Lorhan's Adjusted Offense Level is 24. (Base Offense Level of 6 + 16 + 2).  With a 3 level reduction for acceptance of responsibility, her Total Offense Level is 21.  Based on a Criminal History Category of I, the resulting guideline range for this Defendant is 37-46 months.

**V.  ROBERTA MARKISHTUM**

For Misprision of a Felony, the Base Offense Level is 9 levels lower than the offense level for the underlying offense, but in no event less than 4.  U.S.S.G. Section 2X4.1.  Per Application Note 1, the "underlying offense" means the offense to which the defendant is convicted of committing the misprision.  With regard to that "underlying offense," the court is to "[a]pply the base offense level, **plus any applicable specific offense characteristics** that were known, or reasonably should have been known, by the defendant."  (Emphasis added).  The court determines the offense level for the underlying offense exactly as it would have had the defendant been convicted of that offense.  From there, the court then applies the misprision guideline provision at Section 2X4.1.

The "underlying offense" is conspiracy to commit mail fraud and wire fraud.  The Base Offense Level is 6 pursuant to U.S.S.G. Section 2B1.1(a)(2).  There are, however, certain specific offense characteristics pertaining to that offense of which Defendant knew or should have reasonably known.  Defendant does not object to the 2 level enhancement for the "mass-marketing" specific offense characteristic pursuant to U.S.S.G.  Section 2B1.1(b)(2)(A)(ii).  For the reasons discussed above with regard to Defendant Dixie Ellen Randock, the court finds that a loss enhancement is justified with regard to Defendant Markishtum, although only a 16 level enhancement pursuant to U.S.S.G. Section 2B1.1(b)(1)(I) since the loss was more than $1 million, but not more than $2.5 million.  In her plea agreement, Markishtum acknowledged the Government could prove beyond a reasonable doubt that from on or about August 4, 1999 until August 11, 2005, "the

**MEMORANDUM OPINION -    13**

diploma mill sold approximately $1,485,026.07 in fraudulent academic products to thousands of individuals located in the United States and elsewhere and that "unbeknownst to the defrauded consumers . . . [the academic] entities were nonexistent shells that conducted no academic business whatsoever."

    For the reasons discussed above with regard to Defendant Dixie Ellen Randock, the court finds a 2 level "relocation" enhancement pursuant to U.S.S.G. Section 2B1.1(b)(9)(A) is not warranted for Defendant Markishtum.  Nor is a "sophisticated means" enhancement warranted for this Defendant pursuant to U.S.S.G. Section 2B1.1(b)(9)(C).  The facts recited in the respective plea agreements and the other evidence of record does not establish that Defendant Markishtum was responsible for complex or intricate offense conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts.

    Defendant's Base Offense Level (and Adjusted Offense Level) for Misprision of a Felony is 15, which is 9 levels lower than the offense level for the underlying offense.  The offense level for the underlying offense is 24 (Base Offense Level of 6, plus 2 levels for mass marketing, plus 16 levels for the loss involved).  With a 2 level reduction for acceptance of responsibility pursuant to U.S.S.G. Section 3E1.1, her Total Offense Level is 13.  This produces a guideline range of 12-18 months.

## VI.  RULINGS ON OBJECTIONS

    The following are the court's rulings on the objections as they have been numbered in the Pre-Sentence Reports pertaining to these Defendants.

### A.  Joint Objections By Dixie Ellen Randock, Steven Karl Randock, Heidi Kae Lorhan and Roberta Lynn Markishtum:

**MEMORANDUM OPINION -      14**

Objection No. 1:  Overruled

Objection No. 2:  Moot per Fed. R. Crim. P. 32(i)(3)(B)(ruling is unnecessary because the matter does not affect sentencing, or the court will not consider the matter in sentencing)

Objections Nos. 3, 4 and 5:  Overruled

Objection No. 6:  Moot

Objection No. 7:  Overruled (with the understanding that Government's concern about foreigners using bogus degrees to obtain H-1B visa is a valid theoretical, legal concern)

Objections Nos. 8, 9, 10, 11, 12, 13, 14, 15 and 16:  Moot

Objections Nos. 17, 18, 19 and 20: Overruled

Objections Nos. 21, 22, 23, 24, 25 and 26: Moot

Objection No. 27:  Sustained.

Objections Nos. 28, 29, 30, 31, 32, 33, 34, 35 and 36:  Moot

**B.  Individual Objections By Dixie Ellen Randock:**

Objection No. 37:  Overruled

**MEMORANDUM OPINION -        15**

Objections Nos. 38 and 39:  Moot

Objection No. 40:  Sustained as to U.S.S.G. Section 2B1.1(b)(9)(A) enhancement, but Overruled as to Section 2B1.1(b)(9)(C) enhancement

Objections Nos. 41, 42, and 43:  Moot

Objections Nos. 44 and 45:  Overruled

Objections Nos. 46, 47 and 48: Moot

## C.  Individual Objections By Steven Karl Randock:

Objection No. 37:  Moot

Objection No. 38:  Overruled

Objections No. 39 and 40: Moot

Objection No. 41:  Sustained as to U.S.S.G. Section 2B1.1(b)(9)(A) enhancement, but not as to Section 2B1.1(b)(9)(C) enhancement

Objection No. 42:  Overruled

Objections Nos. 43, 44, 45, 46, 47, 48 and 49:  Moot

Objections Nos. 50 and 51:  Overruled

**MEMORANDUM OPINION -    16**

Objection No. 52:  Moot

Objection No. 53:  Overruled

Objections Nos. 54, 55 and 56:  Moot

Objection No. 57:  Overruled

Objection No.  58:  Moot

**D.  Individual Objections By Roberta Lynn Markishtum:**

Objections Nos. 1 and 2:  Overruled.

**E.  Objection By Government Re Markishtum:**

Objection No. 1:   Sustained because these are facts recited in Markishtum's plea agreement and she agreed the Government could prove them beyond a reasonable doubt.

The District Executive shall forward copies of this memorandum opinion to counsel of record, to the U.S. Probation Office (Spokane), and to the Bureau of Prisons.

**DATED** this   8th   day of July, 2008.

*s/Lonny R. Suko*___

LONNY R. SUKO
United States District Judge

**MEMORANDUM OPINION -       17**